```
                                            FILED
                                      JUL 2 5 2002
    UNITED STATES DISTRICT COURT
         DISTRICT OF ALASKA    UNITED STATES DISTRICT COURT
                                       DISTRICT OF ALASKA
UNITED STATES OF AMERICA,    )   Case No. A02-0031-CR    By_____ Deputy
                             )
              Plaintiff,     )   Anchorage, Alaska
                             )   Wednesday, May 29, 2002
         vs.                 )   9:38 o'clock a.m.
                             )
ROBERT A. LONG,              )   TRIAL BY JURY - DAY 2
                             )
              Defendant.     )
                             )
```

                    VOLUME II
              TRANSCRIPT OF PROCEEDINGS

         BEFORE THE HONORABLE JOHN W. SEDWICK
         UNITED STATES DISTRICT JUDGE, and a jury

APPEARANCES:

For the Plaintiff:        DANIEL COOPER, ESQ.
                          Assistant U.S. Attorney
                          U.S. Attorney's Office
                          222 West 7th Avenue, Room 253
                          Anchorage, Alaska  99513
                          (907) 271-5071

For the Defendant:        MICHAEL DIENI, ESQ.
                          Assistant Federal Public
                             Defender
                          550 West 7th Avenue, Suite 160
                          Anchorage, Alaska  99501
                          (907) 646-3400

Court Recorder:           DEBBY LYONS
                          U.S. District Court
                          222 West 7th Avenue, #4
                          Anchorage, Alaska  99513
                          (907) 677-6151

Transcription Service:    NODAK ROSE TRANSCRIPTS
                          P.O. Box 1752
                          Bismarck, North Dakota  58502
                          (701) 223-2096

Proceedings recorded by electronic sound recording.  Transcript produced by transcription service.

TRANSCRIPT LOCATED IN EXPANDO FILE    TRANSCRIPTS
                                      smarck, ND 58502
                                      3-2096

10129

EXHIBIT G
Page 1 of 15 Pages

but, ladies and gentlemen, in any event it's now time for luncheon recess for you. I'm going to excuse you at this time and ask you to be back in the jury assembly room at one-fifteen so that we can start in the courtroom at one-thirty.

I'll remind you of my earlier admonition not to discuss this case even among yourselves because you must keep an open mind about the case until you've heard everything you're going to hear from the parties and the court and you retire to deliberate. If anybody attempts to discuss the case with you, please let me know immediately by giving a note to the clerk who's assisting me.

All right. At this time, the jury is excused. I'll ask the parties to remain briefly.

(Pause)

(Jury out at 12:01 p.m.)

THE COURT: All right. The jury has left the -- the courtroom. I wanted to address with you briefly the matter of -- of evidence that Mr. Dieni may wish to present on behalf of Mr. Long. I did review the response that Mr. Dieni filed to the Government's trial brief, and the trial brief -- the Government, of course, argued that evidence concerning Mr. Long's reputation for having a peaceful character shouldn't be admitted in evidence. Mr. Long argues through Mr. Dieni that the pertinent Rules of Evidence are Rules 404 and 405, and that pursuant to these rules, such testimony should be admitted.

NODAK ROSE TRANSCRIPTS
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

EXHIBIT G
Page 2 of 15 Pages

10130

1    However, as -- as you know, the rules need to be
2 applied in the context of this case and it's a case in which
3 the jury must determine if the statements made in February of
4 2002 are statements --
5         -- "which a reasonable person would have foreseen to
6            be understood as serious threats of bodily harm by
7            the judicial officers to whom the statements were
8            directed."
9 Now as the parties also know, the law requires that this in-
10 quiry be determined on the basis of the entire relevant fac-
11 tual context.
12       As I see it, there is a preliminary step which would
13 have to be made before evidence of Mr. Long's peaceable repu-
14 tation among his friends and acquaintances in Seward could be
15 considered as -- as relevant to part of the factual context.
16 It seems to me there must be some showing that a reasonable
17 person would have some reason to believe that the judicial
18 officers would or should have known of Mr. Long's reputation
19 for peaceful behavior and absent that foundation, the defen-
20 dant's reputation in Seward really has no bearing on whether a
21 reasonable person would foresee that the statements he made in
22 February of 2002 would be understood as serious threats by
23 those to whom they were communicated.
24       I don't know if the defendant can lay the necessary
25 foundation or not. It may be that you can, I don't know, but

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

10131

EXHIBIT 6
Page 3 of
15 Pages

2-98

1  in any event, it seems to me that without that foundation,
2  then I can't -- then that evidence is simply not relevant.
3  The fact that a bunch of people in Seward may believe this man
4  is a peaceable person doesn't inform judgment about what a
5  reasonable person would think that -- the people who were
6  threatened would believe if they didn't know about it.
7       Mr. Dieni, I -- unless I've missed something, I just
8  -- I think there's a gap in the -- in the logic here.
9              (Pause)
10      And maybe you can lay the foundation, I don't know.
11 There's a lot of papers that have been filed here.  I don't
12 know what all has been filed.  The judge --
13      MR. DIENI:  I -- I can't connect the opinions of the
14 people in Seward to what Judge Roberts or Judge Singleton may
15 or may not have known.  I think the -- that's one aspect of my
16 argument.  I guess I have a hard time equating what we just
17 heard, to which I objected to and still do, that Deputy Mar-
18 shal Guinn now testified that Mr. Long was -- was telling him
19 in a private conversation that he would shoot the next officer
20 he met, and then in the same -- in the same instance, I can't
21 put on evidence that --
22      THE COURT:  Well, but here -- here's the difference.
23      MR. DIENI:  -- that he's a peaceable --
24      THE COURT:  Here's the difference.
25      MR. DIENI:  Help me.

2-99

THE COURT: What -- what the deputy heard was communicated through his chain of command to the people who were -- may or may not have been threatened. What the people in Seward kept to themselves was not made known.

MR. DIENI: I -- I don't know that it was communicated and I don't know that the -- the -- the --

THE COURT: Well, there's evidence from which that --

MR. DIENI: -- declarant would have known that it was going to be communicated.

THE COURT: I -- I believe there's evidence from which that inference can be drawn. There's testimony here that the Marshal -- Deputy Marshal reported to his boss who went personally to the chambers of Judge Singleton and Judge Roberts. So that's the difference. But for me to bring a number of people in who say, gee, I knew the man in the coffee shop in Seward and he was always peaceful doesn't tell us how anybody should apprehend his acts. I --

MR. DIENI: Why is it that he shouldn't conclude that if an investigation is being done -- I mean, Marshals are coming down there -- or maybe he doesn't know what else they're doing, but the point is the investigation --

THE COURT: I'm not foreclosing your questioning these Marshals -- or the one who's left to testify -- about whether or not they asked about his reputation and learned

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

2-100

about it. That's one of the ways you might lay a foundation.

MR. DIENI: I don't believe they did. If they did, it was just people that don't him very well. They -- they stopped at the police station and left from what I understand. But the -- but -- but -- but, Your Honor, it -- it -- why should -- why should a reasonable person in Mr. Long's --

THE COURT: Well, I --

MR. DIENI: -- position presume that they haven't done that kind -- have -- of work? Why should -- keep in mind, it's --

THE COURT: The reasonable person can only reason from the facts that we have available, and there is no -- I'm a -- I've told you that if you can lay a foundation and I agree, that the reputation evidence is appropriate. But if you can't do that, the reasonable person wouldn't -- couldn't inform his or her judgment with facts that were not known.

MR. DIENI: The argument we wish to make ultimately is if this man is known to be peaceable by credible people and we -- I think you know from the bail -- bail hearings that we do have credible people to -- to -- to address these matters, including the ex-police chief of seventeen years. If he's known in that light in that community, then from his perspective as the declarant of the writings, the Court's suggesting that he should have somehow in -- in the course of communicating the writings attached an affidavit from the -- from Louis

NoDak Rose Transcripts
P.O. Box 1752 ✦ Bismarck, ND 58502
(701) 223-2096

EXHIBIT G
Page 6 of 15 Pages

10134

2-101

Bencardino that -- that he's peaceable.

THE COURT: Might have been a better idea not to make the writings to begin with, so --

MR. DIENI: Well, certainly --

THE COURT: -- so --

MR. DIENI: -- but I -- I guess the point is if everybody knows that he talks --

THE COURT: Everybody doesn't know.

MR. DIENI: -- but he doesn't do.

THE COURT: That's the problem, Mr. Dieni, everybody doesn't know that.

MR. DIENI: Well, all -- all --

THE COURT: The test under <u>Arosco Santione</u> (ph) is whether a reasonable person would foresee that the people who were threatened would understand it was a serious threat of bodily harm. So the question is what would those people -- what did they know? What would be reasonable for them to foresee? I -- I mean, it may be that it wouldn't be reasonable for them to foresee this as a threat, I don't know that, but I don't think you can include in the calculus of what they should have considered things that were -- couldn't have been known to them.

MR. DIENI: Well, the couldn't part --

THE COURT: Wouldn't -- weren't known to them. You could --

NoDak Rose Transcripts
P.O. Box 1752 ✦ Bismarck, ND 58502
(701) 223-2095

10135

EXHIBIT G
Page 7 of 15 Pages

2-102

MR. DIENI: Couldn't or wouldn't --

THE COURT: -- if you can prove they were --

MR. DIENI: I mean, but that's just -- you know, when we talk about a reasonable person test, I don't think we have to make that tie the connection. I think it --

THE COURT: All right. Well --

MR. DIENI: -- it's something that could have been known and if Marshals were fishing around in Seward, though maybe indeed they didn't, and I don't believe they did, why is it that Mr. Long would necessarily know what all of their activities were at the time they were fishing around in Seward?

THE COURT: It doesn't matter what Mr. Long knew. The question is what a reasonable person would foresee. That's the test set down by the Ninth Circuit and the one I'm trying to apply.

MR. DIENI: Well, the reasonable person in this case -- well, this is getting a little -- a little bit confusing, but the reasonable person would have known that the Marshals were fishing --

THE COURT: No, act -- actually, it's not. A reasonable person would not try and foresee something -- and understanding that was informed by facts the person didn't know. It would not be reasonable to expect Judge Singleton to evaluate Mr. Long's conduct on the basis of something known to, and only to, his friends in Seward. That's not reasonable.

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-3096

10136

EXHIBIT 6
Page 8 of 15 Pages

MR. DIENI: Well, I'm -- I'm not going to -- I -- I -- I'll think about it over lunch, but I do not believe I'm going to be able to get a phone call from Mr. Bencardino informing the Court that -- that he's really a peaceful guy before he wrote these letters. And -- I mean, I just -- I -- I -- that -- and I don't believe the rules require me to lay that kind of a specific foundation. I mean, we've got folks from Anchorage coming there interviewing him, getting him to say, you know, in the course apparently of outrageous things, and then I can't call people from Seward to say he -- it's all steam, he doesn't mean it, and -- and -- and advise this jury's sensibilities about what kind of guy he is.

I -- I think the Court's over-reading -- also over -- over-reading 404, the requirement. I think the phraseology is pertinent, character, trait, it doesn't -- it doesn't -- it doesn't require that it -- it attach itself to the precise elements of -- of the offense, it just says pertinent. I think that if you view this -- this -- this globally from the standpoint of -- of what are we talking about? It's an assault case, a -- in -- in which -- it's based on a threat of violence. If it comes to pass that -- that the person making the threat is -- is -- is known in the community to not be violent, how can that --

THE COURT: The community in which --

MR. DIENI: -- not be a pertinent trait of -- of --

NoDak Rose Transcripts
P.O. Box 1752 ✦ Bismarck, ND 58502
(701) 223-2096

10137

EXHIBIT G
Page 9 of 15 Pages

1   THE COURT:  The community in which the threat was
2   made is -- is here in Anchorage, not a -- not a coffee shop in
3   Seward.
4   MR. DIENI:  It's Alaska.  It's a hundred and thirty
5   miles away, the Marshals had been there -- I -- I can't draw
6   those connections.
7   THE COURT:  Well, I -- I've heard enough, Mr. Dieni.
8   I -- I'm -- unless you can lay the foundation, I -- I've told
9   you this in advance so you'd know what you'd have to do in
10  order to put that evidence in.
11      Now you also mentioned showing a video of the café.
12  I don't see any reason why you can't do that because the Mar-
13  shals have testified about where they saw him and about his
14  demeanor there, and I don't see any reason why that isn't ap-
15  propriate.  They -- they can presumably have described the
16  circumstances in which they met Mr. Long, so if you wish to do
17  that, I'll permit you to do it.  If you have some other testi-
18  mony or evidence you wish to put on, of course you may do
19  that, but I don't think that testimony of Mr. Long's peaceable
20  character will be -- can't -- I won't admit it unless you can
21  lay a foundation that there's some way that that was communi-
22  cated to the people who are the targets of the threat.
23      All right.  I do have some draft jury instructions
24  and we'll need to be looking at those first thing this after-
25  noon, I suppose, too.  If you'd like, I can give copies of the

NoDak Rose Transcripts
P.O. Box 1752  •  Bismarck, ND 58502
(701) 223-2096

10138

EXHIBIT G
Page 10 of
15 Pages

2-105

to you now, but you may not have time to do much with them until this afternoon in any event. It's your choice. If you want to come by --

MR. DIENI: One thing I need to do, Your Honor, is -- is complete the record with regard to the evidence that's not going to be admitted apparently unless I can prove that their information was communicated to the judges in -- in -- in -- in Anchorage that are the --

THE COURT: All right. Well, I believe the -- the offer of proof is fairly evident from the record. It is that you will call some people who will testify that Mr. Long has a reputation for being a peaceable individual, correct?

MR. DIENI: Yes, but I want to state them by name and -- and -- and -- and -- and offer more specifics. I will -- I will represent to the Court that the testimony would be the same as what was taken at Mr. Long's bail hearing in which Louis Bencardino testified, in which Tina Crump testified, there are two other witnesses, Constance Bencardino and Penny Hardy also would testify that they have known Mr. Long for several years and that he has not only a reputation for peacefulness, but it is their personal opinion that that is his character to be peaceful and not violent. So those are the people we would -- we would call, and I guess I'll leave it at that.

THE COURT: All right. Well, your offer of proof is

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2095

EXHIBIT G
Page 11 of 15 Pages

10139

2-106

```
 1  noted and my -- my ruling is that I don't believe that's ap-
 2  propriate under Arosco Santione (ph) unless you can lay a
 3  foundation showing that that reputation would or should have
 4  been known by the objects of the threats.
 5          All right.  Would -- would you like to pick up the
 6  jury instructions?
 7          MR. COOPER:  I -- I would, Your Honor.
 8          THE COURT:  All right.  Mr. Dieni?
 9          MR. DIENI:  (No audible reply)
10          THE COURT:  If you would, I'd ask you to just follow
11  me down to chambers now and I'll give them to you and then
12  we'll resume here --
13          MR. DIENI:  I -- I do need to take a look at them
14  after --
15          THE COURT:  Yeah.  Sure.  Well, we'll have time to
16  address them later, I just was going to give you a copy now.
17          MR. COOPER:  Thank you, Your Honor.  I just --
18  what's the Court's feeling?  Are we going to get in -- assum-
19  ing that we have another hour's worth of evidence, are we go-
20  ing to go to closings today or are we going to instruct and
21  close the --
22          THE COURT:  If we actually finish the evidence at
23  two-thirty, I see no reason why we shouldn't expect to have
24  closings and instructions today, but if it goes much longer
25  than that, then we'll probably put it off because I want you
```

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

10140

EXHIBIT 6
Page 12 of 15 Pages

2-107

1  to have an opportunity to -- for your arguments.
2           MR. COOPER:  Thank you.
3           MR. DIENI:  What -- what time is -- is the jury com-
4  ing back, sir?
5           THE COURT:  One-thirty.
6           MR. DIENI:  One-thirty?  'Kay.
7           THE COURT:  Yeah.  All right.  We'll go off record.
8           THE CLERK:  Off record.
9      (Recess at 12:14 p.m., until 1:335 p.m.)
10     (Jury not present)
11          THE CLERK:  All rise.  His Honor the Court, the
12 United States District Court for the District of Alaska is
13 again in session.
14          THE COURT:  Good afternoon.
15          MR. COOPER:  Good afternoon, sir.
16          THE COURT:  The Clerk advises me that one or both of
17 you have matters to bring up before we ask the jury in.
18          MR. COOPER:  Yes, Your Honor, and I'll be very
19 brief.  Apparently earlier today in Milwaukee, Wisconsin,
20 there was a shooting in a courthouse where a defendant jumped
21 up and grabbed a -- a deputy's gun and -- and shot the deputy
22 and then the defendant was then shot dead by the -- the case
23 agent, the police officer.  I'm sure that the news is just now
24 coming out about it.  It's going to probably receive a lot of
25 play through the press, and so my request would be that the

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

EXHIBIT G
Page 13 of
15 Pages

10141

2-108

1  jury be encouraged in stronger than usual terms to avoid any
2  media tonight to avoid tainting the panel.
3          THE COURT: All right. Well, I'll most certainly do
4  that. Mr. Dieni, I don't -- can you think of anything else we
5  can do beyond that?
6          MR. DIENI: No, I think that's about it, short of --
7          THE COURT: Well, we could sequester the jury, but I
8  don't think we want to do that. I don't think that's neces-
9  sary.
10         MR. DIENI: Just tell them not to -- not to watch
11 the news.
12         THE COURT: And I -- I think they -- they ought to
13 be -- well, in any event, I will certainly do that.
14         MR. DIENI: Thank you, Your Honor.
15         THE COURT: I -- I did wish to report to you, too, I
16 have received a note from a juror. I think based on our ear-
17 lier discussions in chambers about our schedule, we can easily
18 accommodate the request. One of the jurors, James Renk (ph)
19 says:
20         "My daughter's award ceremony is today at five-
21         thirty p.m. in Wasilla. If it's possible, I'd like
22         to get back to Wasilla at four p.m. It is the last
23         ceremony of the year. I have attended all the other
24         ceremonies during the year. It would be nice to be
25         there, but not really important."

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

10142

EXHIBIT G
Page 14 of 15 Pages

2-10

1  Apparently we can accommodate him and we'll see.
2          MR. COOPER: We'll see.
3          THE COURT: All right. And it would appear we're
4  ready to bring the jury back in --
5          MR. DIENI: No, sir. I wanted to --
6          THE COURT: Oh, we have another matter?
7          MR. DIENI: Yeah, I wanted to ask a few questions c
8  Marshal Guinn on the character issue and -- and make an offer
9  of proof. I remembered after we spoke he had said something
10 in a bail hearing that might be the connective fact and --
11         THE COURT: All right.
12         MR. DIENI: -- rather than going to a character is-
13 sue in front of the jury, it seemed like it needed to be done
14 outside --
15         THE COURT: That's fine. All right. Mr. Guinn, if
16 you'll step up here, we'll allow Mr. --
17         THE WITNESS: Yes, sir.
18         THE COURT: -- Mr. Dieni to proceed. All right.
19 You recall, sir, you're giving testimony under oath?
20         THE WITNESS: Yes, sir.
21     **KEVIN GUINN, PLAINTIFF'S WITNESS, PREVIOUSLY SWORN**
22         THE COURT: Thank you. Very well. We'll proceed
23 outside the presence of the jury for the moment. Mr. Dieni?
24                     VOIR DIRE
25 BY MR. DIENI:

NoDak Rose Transcripts
P.O. Box 1752 • Bismarck, ND 58502
(701) 223-2096

EXHIBIT G
Page 15 of
15 Pages